**E-FILED**
Wednesday, 30 January, 2008  04:05:30 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KRISTEN ANN KUEHL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 07-4040 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

# O R D E R

This matter is now before the Court on Petitioner, Kristen Ann Kuehl's ("Kuehl"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and the Government's Motion to Dismiss. For the reasons set forth below, the Motion to Dismiss [#4] is GRANTED, and Kuehl's § 2255 Motion [#1] is DENIED.

## BACKGROUND

On May 25, 2006, Kuehl entered a guilty plea pursuant to a written plea agreement to charges of conspiracy to manufacture methamphetamine and the manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 in the United States District Court for the Central District of Illinois. On September 14, 2006, she was sentenced to a term of 120 months' imprisonment, followed by a term of supervised release.

Although she waived her right to appeal and pursue collateral relief pursuant to § 2255 in ¶¶ 11 and 12 of the written plea agreement, Kuehl has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In her Motion, Kuehl attempts to collaterally attack her conviction based on allegations that she received ineffective assistance of counsel, that her sentence is harsher because she got sober before she was indicted and does not qualify for the drug program, and that she was

erroneously charged with the quantities and conduct of her co-defendants.  This Order follows.

## Discussion

A petitioner may avail herself of § 2255 relief only if she can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice."  Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995).  Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude."  Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993).  A § 2255 motion is not, however, a substitute for a direct appeal.  Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S. Ct. 205 (1995).

Here, Kuehl would appear to be barred from bringing this § 2255 motion by virtue of the fact that her plea agreement contains a waiver of her right to bring a collateral attack on her sentence.  While she does assert that she should be resentenced, she makes no attempt to avoid the impact of this waiver by asking the Court to vacate her guilty plea and does not present any evidence indicating that but for her counsel's ineffective assistance, she would not have entered into the plea agreement.  Perhaps this is because she believes that the plea bargain's advantages outweigh its disadvantages.  In any event, so long as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced.  Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144 (7th Cir. 1999); United States v. Nelson, 124 F.3d 206, 1997 WL 374712, at *1 (7th Cir. July 1, 1997).

- 2 -

However, this circuit has recognized that the right to pursue a collateral attack pursuant to § 2255 survives "with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1144-45. Accordingly, while Kuehl does not contend that she received ineffective assistance of counsel in connection with the negotiation of the waiver, the Court will address her claim to the extent necessary to determine whether the negotiation of the various waiver provisions is implicated.

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, she would not have entered the guilty plea and would have insisted upon going to trial. United States v. Woolley, 123 F.3d 627, 635 (7th Cir. 1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" United States v. Ryan,  986 F.Supp. 509, 513 (N.D.Ill. 1997), citing Key, 806 F.2d at 139; see also McCleese v. United States, 75 F.3d

1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, there are no specific factual assertions to the effect that Kuehl's attorney rendered ineffective assistance in negotiating her plea agreement. Kuehl does not argue that but for the purportedly misleading advice of counsel, she would have rejected the plea offer and insisted on going to trial and does not ask to set aside her plea agreement.

Furthermore, a review of the transcript of the plea hearing reveals that, after a detailed discussion of the maximum sentence she could face depending on the nature of any past criminal conduct, Kuehl received a lengthy explanation of the waiver provision and its consequences during the plea colloquy. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by her counsel with respect to the waiver provisions, and hence, she has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Kuehl's waiver and guilty plea, as well as her competency.

When the Court accepted Kuehl's guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., citing United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant

- 4 -

during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding.  <u>Id.</u>, *citing* <u>Thompson v. Wainwright</u>, 787 F.2d 1447 (11th Cir. 1986); <u>Blackledge v. Allison</u>, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977).  Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity."  <u>Blackledge</u>, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that she has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that she made during that hearing.  The pertinent portion of the record reveals the following colloquy between Kuehl and the Court after she was placed under oath:

> Q:  Do each of you understand that you are now under oath and your answers to my questions are subject to the penalties of perjury or of giving a false statement if you don't answer truthfully?  Do you understand that?
>
> * * *
>
> A:  Yes.
>
> * * *
>
> Q:  Have you been treated recently for any mental illness or addiction to drugs?
>
> A:  Not recently.  I went through rehab, but it was over two years ago.
>
> * * *
>
> Q:  Are any of you currently under the influence of any drug, medication, or alcoholic beverage?
>
> * * *
>
> A:  No.
>
> * * *

- 5 -

Q:     Have each of you received a copy of the indictment pending
       against you, that is the written charges made against you in
       this case?

                                    * * *

A:     Yes.

                                    * * *

Q:     Have each of you fully discussed those charges and the case
       in general, including any possible defenses that you might
       have, with your attorneys?

                                    * * *

A:     Yes.

                                    * * *

Q:     Are each of you fully satisfied with the counsel, representation
       and advice given to you in this case by your attorneys?

                                    * * *

A:     Yes.

                                    * * *

Q:     As I understand it, your willingness to plead guilty here today
       is due, at least in part, to the discussions that each of you have
       had with your attorneys and the attorneys for the Government
       leading up to the execution of these written plea agreements?

                                    * * *

A:     Yes.

                                    * * *

Q:     Did each of you have a reasonable opportunity to read and
       discuss the plea agreement with your attorneys before you
       signed it?

                                    * * *

A:     Yes.

                                    - 6 -

\* \* \*

Q:     As to each of you, does the plea agreement represent in its
        entirety every understanding that you have with the
        Government?

\* \* \*

A:     Yes.

\* \* \*

Q:     Do each of you understand the terms of your plea agreement?

\* \* \*

A:     Yes.

\* \* \*

Q:     On page 5, there are two different paragraphs.  Each talks
        about a waiver.  Paragraph 11 is a waiver of right of appeal
        from conviction and sentence.  That has to do with a situation
        after a person is sentenced, if they're not happy, they can
        typically file an appeal with the Court of Appeals in Chicago.
        In that appeal they can claim that there was something
        unlawful or unconstitutional about the process that was used
        in the trial court or the sentence itself.  That could even include
        a claim that the defendant did not receive effective assistance
        of counsel.  In this paragraph, you're giving up the right to file
        a direct appeal with two very narrow exceptions.  Number one,
        if the Court were to impose a sentence that's more than the
        statutory maximum.  That's not likely to happen here since the
        maximum is life in prison. The other reservation would be that
        you could file a notice of appeal and claim that your attorney
        had not effectively represented you in the negotiation of this
        plea agreement.  But in all other respects, even effective
        assistance of counsel claims are waived.  Do each of you
        understand the very broad nature of this waiver?

\* \* \*

A:     Yes.

\* \* \*

- 7 -

Q:      The next paragraph is also a waiver paragraph.  That's waiving a proceeding that would be filed here in the trial court after conviction.  It's normally done by what's called a petition for writ of habeas corpus.  In such a proceeding, again a person could claim that there was something unlawful or unconstitutional about the process or about the sentence.  Again, that could even include a claim that the person had not effectively been represented by counsel.  In this paragraph you're giving up the right to do that period.  Do you understand?

                                    * * *

A:      Yes.

                                    * * *

Q:      So the bottom line on this is because of these waiver provisions, when you walk out of here on the date of sentencing, even if you're very unhappy, your opportunity to challenge that sentence is virtually nonexistent.  Do you understand?

                                    * * *

A:      Yes.

                                    * * *

Q:      Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty?

                                    * * *

A:      No, Your Honor.

                                    * * *

Q:      Has anyone attempted in any way to force you to plead guilty?

                                    * * *

A:      No, Your Honor.

                                    * * *

Q:      Are each of you pleading guilty of your own free will because you are guilty?

                            * * *

A:      Yes, Your Honor.

                            * * *

Q:      Do each of you understand all of the possible consequences of your plea?

                            * * *

A:      Yes, Your Honor.

                            * * *

Q.      Do you also understand that under some circumstances, we have been discussing your very limited right to appeal.  Do you understand you have those two very narrow opportunities to appeal?  Is that correct?

                            * * *

A.      Yes, Your Honor.

                            * * *

Q.      Do you also understand that the Government might have the right to appeal the sentences imposed?

                            * * *

A.      Yes, Your Honor.

                            * * *

Q.      Do you also understand that by entering into this plea agreement and entering a plea of guilty, you will have waived or given up almost all of your right to appeal or otherwise challenge your sentence?

                            * * *

A.      Yes, Your Honor.

(Change of Plea Transcript at 4 - 22.)

The Court finds that nothing in the record even remotely suggests that Kuehl did not knowingly and voluntarily enter the plea agreement, including the waiver provisions contained therein.  To the contrary, it clearly indicates that she expressly waived her rights to appeal and pursue collateral relief on more than one occasion after extensive questioning and explanation by the Court.  Thus, the record also demonstrates that the Court provided her with a lengthy and detailed explanation of the waiver provisions that was more than adequate to supplement or correct any lack of information or misinformation that may have been provided by counsel.  After receiving this explanation, Kuehl proceeded to state on more than one occasion that she was acting voluntarily and understood everything as it had been explained to her by the Court.

Therefore, regardless of her current protestations that counsel was less than diligent in his representation and provided ineffective assistance, the record before the Court unequivocally demonstrates that Kuehl acted knowingly and freely in entering into the plea agreement, including the waiver provisions.  Had she truly not wished to plead guilty, not understood the proceedings in which she participated, or been caught unaware by the waiver provisions, it would seem only reasonable that she would have made some attempt to correct the factual record or bring her plight to the attention of the Court.

Kuehl has failed to demonstrate that ineffective assistance of counsel negated the knowing or voluntary nature of her plea or the waiver itself, that the waiver was a product of coercion, or that the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence.  Accordingly, the Court now holds that Kuehl's waiver of her right to pursue collateral relief was both knowing and voluntary and operates to bar her from pursuing further habeas corpus relief, and this § 2255 Motion is therefore frivolous.

*See* <u>Mason v. United States</u>, 211 F.3d 1065, 1069 (7th Cir. 2000); <u>Jones v. United States</u>, 167 F.3d 1142, 1145 (7th Cir. 1999); <u>Roberts v. United States</u>, 429 F.3d 723, 724 (7th Cir. 2005).

## CONCLUSION

For the reasons set forth herein, the Court cannot find that there has been any credible showing that but for the alleged unprofessional errors of counsel, there is any reasonable probability that the result of this proceeding would have been different, as the record clearly demonstrates that Kuehl knowingly, intelligently, and voluntarily waived her right to bring both an appeal and collateral attack on her conviction and sentence. Accordingly, the Government's Motion to Dismiss [#4] is GRANTED, and Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [#1] is DISMISSED.  This matter is now terminated.

ENTERED this 30th day of January, 2008.


 s/Michael M. Mihm
Michael M. Mihm
United States District Judge